REQUESTED BY: Senator David Landis Member of the Legislature State Capitol Lincoln, NE 68509
Dear Senator Landis:
This letter is in response to your correspondence of September 11, 1981, in which you asked, `Are the state civil rights' enabling statutes sufficient legislative authority for a home rule charter city to enact anti-discrimination protections for classifications not specifically mentioned in state law?' Your concern was whether you would need to reevaluate existing state statutes on this issue and perhaps introduce new legislation.
The powers of Nebraska municipalities are set out inJacobs v. City of Omaha, 181 Neb. 101, 147 N.W.2d 160
(1966):
 Our law is well settled: "* * * that a municipal corporation `possesses, and can exercise, the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation not simply convenient, but indispensable.'" 181 Neb. at 104.
The authority of municipalities to adopt civil rights ordinances is found in several places in the Nebraska statutes.
Neb.Rev.Stat. § 18-1724 (Cum.Supp. 1980) provides in part:
 Notwithstanding any other law or laws heretofore enacted, all cities and villages in this state shall have the power by ordinance to define, regulate, suppress and prevent discrimination on the basis of race, color, creed, religion, ancestry, sex, marital status, national origin, age, or disability in employment, public accommodation, and housing, and may provide for the enforcement of such ordinances by providing appropriate penalties for the violation thereof.
Neb.Rev.Stat. § 20-113 (Cum.Supp. 1980) states:
 Any incorporated city may enact ordinances, and any county may adopt resolutions, which are substantially equivalent to sections 20-105 to 20-143, 48-1001 to 48-1009, 48-1102 to 48-1125, and 48-1210 to 48-1227, or which are more comprehensive than such sections in the protection of civil rights. . . . Such ordinance or resolution may include authority for such local agency to seek an award of damages or other equitable relief on behalf of the complainant by the filing of a petition in the district court in the county with appropriate jurisdiction. The local agency shall have within its authority jurisdiction substantially equivalent to or more comprehensive than the Equal Opportunity Commission or other enforcement agencies provided under sections 20-105 to 20-143, 48-1001
to 48-1009, 48-1102 to 48-1125, and 48-1210 to 48-1227, and authority to order back pay and other equitable relief, or to enforce such orders or relief in the district court with appropriate jurisdiction.
Neb.Rev.Stat. § 20-113.01 (Cum.Supp. 1980) states:
 In order to declare the intent of the present Legislature and to effect the original intent of sections 18-1724 and 20-113, the Legislature finds that civil rights are a local as well as state concern and the Legislature desires to provide for the local enforcement and enactment of civil rights legislation concurrent with the authority of the State of Nebraska.
A determination whether or not Neb.Rev.Stat. § 20-113
delegates authority to a city to enact ordinances which would protect classifications of individuals not specifically mentioned in the state laws depends on the interpretation of the language `more comprehensive than.'
Because the meaning of `more comprehensive than' is not clear on its face, one must turn to the legislative history of § 20-113. PPG Industries Canada Ltd. v. Kreuscher,204 Neb. 220, 281 N.W.2d 762 (1979).
When § 20-113 originally was enacted in 1969, it provided:
 Any incorporated city may enact ordinances, and any county may adopt resolutions, which are substantially equivalent to this act . . . . when the commission determines that any such city or county has enacted an ordinance or adopted a resolution that is substantially equivalent to this act and has established an agency to administer such ordinance or resolution, the commission shall thereafter refer all complaints arising in such city or county to the appropriate local agency.
Laws 1969, c. 120, § 9, p. 544, LB 718. `This act', referred to in § 20-113, was the open housing act, Neb.Rev.Stat. § 20-105 to § 20-125, § 48-1102, and 48-1116.
The purpose of section 9 was to allow cities and counties to enact ordinances or resolutions which would allow them to handle fair housing complaints on a local basis, provided that the local ordinances and resolutions were `substantially equivalent' to the state statute. Comments of Senator Elrod, Floor Debate on LB 718 (1969), May 28, 1969, p. 1812.
Neb.Rev.Stat. § 20-113 was amended in 1974 and 1979. The 1974 amendment added the language `more comprehensive than' to the statute.
 Any incorporated city may enact ordinances, and any county may adopt resolutions, which are substantially equivalent to sections 20-105 to 20-143, 48-1102, and 48-1116, or which are more comprehensive than such sections in the protection of civil rights. . . . When the commission determines that any such city or county has enacted an ordinance or adopted a resolution that is substantially equivalent to sections 20-105 to 20-143, 48-1102, and 48-1116, or is more comprehensive than such sections in the protection of civil rights, and has established an agency to administer such ordinance or resolution, the commission shall thereafter refer all complaints arising in such city or county to the appropriate local agency; . . .
Laws 1974, LB 681, § 1. The enumerated sections were expanded to include not only the open housing act, but also the public accommodations act, Neb.Rev.Stat. §§ 20-132 to20-143.
The introducer's statement of purpose stated that LB 681 `allows cities to enact civil rights ordinances more comprehensive than state law.' Senator H. Simpson, January 22, 1974.
Testimony at the committee hearing by a City of Lincoln attorney indicated that the `substantially equivalent' limitation could lead to situations where a local government would not be able to enforce its local ordinance on a matter not included in the state law. Testimony by James Faimon, Committee on Urban Affairs, hearings, February 13, 1974, p. 11.
At the hearing, Senator Simpson stated that LB 681 `covers all of these sections, that the incorporated city may enact ordinances, . . . If you read down it will cover all of the sections, within these sections, the incorporated city may enact ordinances.' p. 28. The senator stressed, "[T]his only adds onto [the `substantially equivalent' language] that the locals may, within these sections, be more comprehensive and then so would be able to enforce them at the local level." p. 28.
The purpose of the 1979 amendment, (LB 438), was to provide enabling legislation for cities which want to enact local anti-discrimination laws. LB 438 amended § 20-113 and added § 20-113.01. It was the direct result of a Nebraska Supreme Court decision which held that the Legislature had not delegated to cities the power to legislate on fair employment practices and civil rights. City of Omaha HumanRelations Dept. v. City Wide Rock Excavating Co.,201 Neb. 405, 268 N.W.2d 98 (1978).
Furthermore, in LB 438, the enumerated sections of state law were expanded to cover all the civil rights provisions under the jurisdiction of the NEOC. Thus, LB 438 retained §§ 20-105 to 20-143, which include open housing and public accommodations, and added §§ 48-1001 to 48-1009, forbidding age discrimination in employment, §§ 48-1219 to48-1227, the equal pay act, and §§ 48-1101 to 48-1125, the fair employment practices act.
The introducer's statement of intent for LB 438 (1979) stated that the purpose of the bill was:
 [T]o provide additional language to that currently contained in Section 20-133 of Nebraska R.R.S. 1943 which will establish a clear grant of authority to municipalities and counties allowing those political subdivisions to adopt ordinances providing for the protection of individuals in their pursuit of equal employment opportunities, public accommodations and open housing.
It is our opinion that although the `more comprehensive than' language could provide incorporated cities and counties with the authority to enact ordinances or resolutions protecting classifications of persons not specifically set out in the state anti-discrimination statutes, a contrary interpretation also is feasible. In order to eliminate any doubts in this matter, one might wish to introduce clarifying legislation. We are also of the opinion that, given the subject matter of the state anti-discrimination statutes, the protection of individuals by cities and counties is limited to the areas of employment, public accommodations, and housing.
Finally, it should be noted that §§ 20-113 and20-113.01 apply to all incorporated cities in the state and are not limited to home rule charter cities. As a result, we feel that a consideration of home rule powers per se is not necessary at this time.
Sincerely, PAUL L. DOUGLAS Attorney General Dale D. Brodkey Assistant Attorney General